USDC SCAN INDEX SHEET

















GEP   11/19/04   8:38

3:04-CV-02314   SPENCER V. SAN DIEGO CITY OF

*1*

*CMP.*

1  SAN DIEGO VOLUNTEER LAWYER PROGRAM F I L E D
2  625 Broadway, Ste. 925
   San Diego, CA 92101                        04 NOV 18 PM 3: 14
3  619-235-5656 / fax 619-235-5668
                                              CLERK U.S. DISTRICT COURT
4  COHELAN & KHOURY                           SOUTHERN DISTRICT OF CALIFORNIA
5  Timothy D. Cohelan (CSB No. 60827)
   605 C Street, Ste. 200                     BY:                    DEPUTY
6  San Diego, CA 92101
7  619-595-3001 / fax 619-595-3000

8  DREHER LAW FIRM
   Robert Scott Dreher (CSB No. 120527)
9  Historic Louis Bank of Commerce Building
   835 Fifth Avenue, Suite 202
10 San Diego, CA 92101
11 619-230-8828 / fax 619-687-0136

12 Attorneys for Plaintiffs

13

14                    UNITED STATES DISTRICT COURT

15                  SOUTHERN DISTRICT OF CALIFORNIA

16 GREG   SPENCER;   RANDALL   FRENCH; )   Civil Case No.:
17 MARGARET ARMSTRONG; JIMMY WARD; )
   JEFFREY   MILES;   SYLVIA   LIEVANOS; )   '04 CV 2 3 1 4   BEN (WMc)
18 JUAN   ALEJO;   STEVEN   GREER;   and )
   ROBERT YBARRA, individually and on behalf )  CLASS   ACTION   COMPLAINT   FOR
19 of themselves and all others similarly situated, )  DAMAGES, INJUNCTIVE RELIEF, AND
                                              )   DECLARATORY   RELIEF   UNDER   THE
20                                            )   UNITED STATES CIVIL RIGHTS ACT (42
              Plaintiffs,                     )   U.S.C. § 1983).
21                                            )
22          vs.                               )
                                              )   Jury Trial Demanded.
23 The CITY OF SAN DIEGO; CITY OF SAN )
   DIEGO POLICE DEPARTMENT; and CHIEF )
24 OF POLICE WILLIAM LANSDOWNE, in his )
   official capacity only,                    )
25                                            )
26            Defendants.                     )
                                              )
27                                            )
                                              )
28 _____ )

## INTRODUCTION

1.      The City of San Diego issues misdemeanor criminal citations for "sleeping in public" to hundreds of people who have nowhere else to sleep.  These citations, issued pursuant to California Penal Code § 647(j), are a cruel violation of the Eighth Amendment to the United States Constitution, and present the homeless with a true Hobson's Choice:  don't sleep in public, or don't sleep at all.  Sleep is a necessity, not a choice.  Unless the City provides an alternative safe-zone where homeless people can sleep without fear of an "illegal lodging" citation, its police force should not be allowed to issue the citations.

2.      "It was the best of times, it was the worst of times."  The contrasts of life as perceived by people in different stations of society are as vivid today as when Charles Dickens penned these words nearly one hundred fifty years ago.  Order, we believe, is better than chaos – predictability is more comfortable than the unknown.  In a society that prizes beauty, youth, vigor, and success that is measured by accumulation of precious things; the disheveled, the aged, the weary; those whose accumulated wealth is carried in a tattered blanket, present themselves in some quarters as a distraction to a desired representation of how the "best of times" should appear.  They are extremely bright; they suffer from mental illnesses.  They are capable of causing serious physical injury or death; their gentleness permits them to share their meager substance with birds that find a safe harbor at their feet.  In making their claim to the American Dream, they participate in publicly-sponsored, government-supported celebrations from distant bridges rather than penthouses, knowing that their rights that Thomas Jefferson proclaimed inviolate, being life, liberty and the pursuit of happiness, are no less guaranteed to them than to those not so vulnerable because they carry evidence of their station in life in their wallets rather than in a bag or worn blanket.  The homeless present many diverse faces. Gaining a better understanding of the daily life issues they face is

1

necessary to judge whether relief is indicated in this case, considering at the same time the requirements law enforcement officials face in performing their lawful duties.[1]

3.     This is an action for injunctive and declaratory relief under 42 U.S.C. § 1983, asking the Court to order the city of San Diego to stop issuing illegal-lodging citations under color of Penal Code §647(j) to homeless people who sleep in public, unless and until it provides an alternative sleep area.

## JURISDICTION

4. This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. Venue is proper in the Southern District of California because all Defendants reside in the District and all events giving rise to Plaintiffs' claims occurred in the District. The relief Plaintiffs seek is within this Court's power to grant.

## CLASS ACTION ALLEGATIONS

5. Plaintiffs bring this action against Defendants on their own behalf and on behalf of all other persons similarly situated.  The classes of people that Plaintiffs represent consist of all those persons in the City of San Diego who are homeless and have no place to sleep other than in public, who face the prospect of receiving an illegal lodging ticket, and those who are homeless and have no place to sleep who have already been issued one or more citations for illegal lodging, pursuant to Penal Code § 647(j).

6. The class is comprised of approximately 4,500 individuals who are homeless and living in the City of San Diego, who have nowhere to sleep and who therefore have received an illegal-lodging citation per Penal Code §647(j), and who face the prospect of arrest and citation under Penal Code §647(j).  Joining all these individuals in this lawsuit is impractical and unnecessary, but the

---

[1] From *Opinion and Order*, Johnson v. Board of Police Commissioners, et al., U.S. Dist. Court, Eastern Dist. of Missouri, Eastern Div., Case No. 4:04CV01266 ERW, Hon. E. Richard Webber, October 14, 2004.

2

disposition of their claims in a class action will benefit the parties, this Court, the Defendants and citizens of this City.

7. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The class is united in its interests with respect to proof of Defendants' conduct, and the alleged effects caused by Defendants' actions. The questions of law and fact common to the class predominate over questions which may affect individual class members, including but not limited to whether Defendants have violated 42 U.S.C. § 1983 by infringing upon Plaintiffs' constitutional freedom from cruel and unusual punishment by arresting them and issuing them citations for illegal lodging.

8. Plaintiffs are asserting a claim that is typical of the claims of the entire class of affected persons who have no place to sleep in the City, and thus are subject to arrest and citation, and the entire class of affected person who have already been arrested and received illegal lodging citations. Class treatment will permit the adjudication of claims by many Class members who could not afford to individually litigate their claims or vindicate their rights against the government. There are no difficulties likely to be encountered in the management of this case which might preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this matter.

9. Plaintiffs will fairly and adequately represent the interests of the class, and they have no interests antagonistic to those of the class. Indeed, Plaintiffs' interests are aligned with those of the class members. Plaintiffs have retained lawyers who are competent and experienced in class action litigation.

10. The class of people whom Plaintiffs represent is in need of the relief sought herein, as its members have been or will be damaged and adversely affected by the issuance of illegal lodging

3

citations by Defendants in light of Defendants' failure to provide or identify alternatives.   In addition, Defendants' practice of issuing misdemeanor criminal citations for "sleeping in public" to people who have nowhere else to sleep wastes valuable and precious tax dollars, diverts the Police's and City's attentions from other more serious issues, steals precious money from the homeless in the form of meaningless fines which they cannot afford, and by incarcerating the homeless takes-up valuable jail space which could be used to house truly dangerous criminals.

## IDENTIFICATION OF PARTIES

11. Plaintiff GREG SPENCER is a resident of San Diego, California.  He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence.  On October 11, 2004 and November 9, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1200 K Street, San Diego.  He was honorably discharged from the Navy in 1989.  On the dates he received these citations, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

12. Plaintiff RANDALL FRENCH is a resident of San Diego, California.  He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence.   On September 28, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1400 Island Avenue, San Diego.  He was honorably discharged from the Marines in 1993.  On the date he received this citation, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

13. Plaintiff MARGARET ARMSTRONG is a resident of San Diego, California.  She is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42

U.S.C. §11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence.  On October 17, 2004; October 20, 2004; October 27, 2004; and November 8, 2004 the Defendants cited her pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1800 Commercial Street, San Diego.  On the dates she received these citations, she had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

14. Plaintiff JIMMY WARD is a resident of San Diego, California.  He was at all relevant times a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacked a fixed, regular and adequate nighttime residence.  In September, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 13TH and L Streets, San Diego.  On the date he received this citation, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full" and he was on the waiting list at St. Vincent de Paul.

15. Plaintiff JEFFREY MILES is a resident of San Diego, California.  He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence.  On October 17, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of I-5 and 17th Street, San Diego.  He was honorably discharged from the Navy in 1989.  On the date he received this citation, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

16.    Plaintiff SYLVIA LIEVANOS is a resident of San Diego, California.  She is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence.  On July 14, 2004 the Defendants cited her pursuant to Penal Code Section 647(j) for "illegal lodging" in

5

the area of 1500 Commercial Avenue, San Diego. On the date she received this citation, she had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

17. Plaintiff JUAN ALEJO is a resident of San Diego, California. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. On October 27, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1800 Commercial Avenue, San Diego. On the date he received this citation, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

18. Plaintiff STEVEN GREER is a resident of San Diego, California. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. On October 1, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 2100 Morley Field, San Diego. On the date he received this citations, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

19. Plaintiff ROBERT YBARRA is a resident of San Diego, California. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. On October 27, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1800 Imperial Avenue, San Diego. On the date he received this citation, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

20. Defendant CITY OF SAN DIEGO is now, and at all times mentioned in this complaint was, a local governmental agency and subdivision of the State of California. Defendant CITY OF SAN DIEGO, through its agents the City Council, City Attorney, City Manager, Police Department,

6

and Police Chief, undertakes to arrest and cite people pursuant to Section 647(j) of the California Penal Code within its territorial boundaries.

21.   Defendant CITY OF SAN DIEGO POLICE DEPARTMENT is the city's law-enforcement department, and WILLIAM LANSDOWNE is the CITY's Chief of Police.  Article V, Section 57 of the City Charter of the CITY OF SAN DIEGO provides for the establishment of the CITY's Police Department, led by a Chief of Police appointed by the City Manager and confirmed by a majority of the City Council.  The City Charter mandates that the CHIEF OF POLICE shall appoint, direct and supervise the personnel of the department and exercise all powers and duties provide by general laws or by ordinance of the City Council.  These laws include, but are not limited to, Penal Code §647(j).  The DEPARTMENT's Mission Statement is "maintain peace and order by providing the highest quality police services in response to community needs by Apprehending Criminals, Developing Partnerships, and Respecting Individuals."   Mr. LANSDOWNE is sued only in his official capacity.

## FACTUAL ALLEGATIONS

22. According to the July 2004 RTFH Regional Homeless Profile, the City of San Diego has only about 2,019 year-round homeless beds, while the number of "homeless people" in the City of San Diego is about 4,458.  With the construction of the new Baseball park and the attendant designation of its immediate and neighboring area (commonly known as "East Village") as "redevelopment zones," the Defendants have adopted a custom, practice and policy of citing, arresting, and otherwise interfering with homeless people for sitting or sleeping, two essential daily activities of life, in public within the City, where these individuals are forced to live.  Beginning in 2001, Defendants' "illegal lodging" citations doubled in number over the prior year.  From May, 2002 to April 2003 alone Defendants issued 773 illegal-lodging tickets pursuant to Penal Code

§647(j).  Plaintiff and the class have been, and continue to be, cited, arrested, and charged with illegal lodging pursuant to California Penal Code § 647(j).  At the same time, the local homeless shelters (i.e., St. Vincent De Paul, Rachel's Women's Center, VOA, Rescue Mission) have been filled to the brim, turning away Plaintiffs and the class members.  Plaintiffs and the class have been and will be arrested and cited by the Defendants solely because they sit or sleep in public places.

23. From June 2001 – July 2002, nearly 4200 people contacted the Info Line of San Diego County seeking nighttime shelter.  Of those individuals, 3,798 were turned away because the shelters were full.  The following year, 3,884 were turned away, while 3,758 were referred to shelters.

24. In the same year, 2,641 individuals were arrested and/or cited pursuant to § 647(j) in the City's Downtown Central Division alone. Thus, almost half of the people turned-away from the shelters were arrested and/or cited for illegal lodging (the arrest figures, however, do not include any area other than the Central Division).

25.  At the time of their arrests for "illegal lodging," Plaintiffs and the class members were not posing a safety hazard to themselves or others.  Plaintiffs were and are involuntarily homeless, with no available shelter or lodging accommodations, and intend to and must sleep or lodge outside, in public, unsheltered, and have been and/or will be in the future arrested and cited therefor.  The statute and its enforcement by Defendants as set forth herein is an attempt by Defendant to deter Plaintiffs and the class from performing the necessary life function of sleeping, which deterrence is impossible.  Plaintiffs and the class members have been prosecuted and will continue to be prosecuted for engaging in, or attempting to engage in, such activity.  Defendants' actions are likely to threaten the already precarious existence of Plaintiffs and the class, by imposing or forcing upon them health and safety hazards as well as economic and social hardship.

26. The above-mentioned actions by Defendants have caused and will continue to cause great humiliation, psychological, physical and emotional suffering, degradation, pain and injury, financial loss, and loss of liberty and freedom to Plaintiffs and the class they represent. Defendants' actions pose a dangerous health risk to Plaintiffs and the class, and, as a result, to the general public. Sleep is a medical and physical necessity. Studies in individuals deprived of sleep have shown that after just 24 hours of sustained wakefulness, the metabolic activity of the brain decreases significantly (up to 6% for the whole brain and up to 11% for specific cortical and basal ganglionic areas). In humans, sleep deprivation also results in a decrease in core body temperature, a decrease in immune system function (as measured by white cell count and activity), and a decrease in the release of growth hormone. Sleep deprivation also has been implicated as a cause of increased heart-rate variability. With decreased sleep, higher-order cognitive tasks are affected early and disproportionately. Tests requiring both speed and accuracy demonstrate considerably-slowed speed before accuracy begins to fail. Total sleep duration of 7 hours per night over 1 week has resulted in decreased speed in tasks of both simple reaction time and more demanding computer-generated mathematical problem solving. Total sleep duration of 5 hours per night over 1 week shows both decrease in speed and the beginning of accuracy failure. Total sleep duration of 7 hours per night over 1 week leads to impairment of cognitive work requiring simultaneous focus on several tasks. In driving simulations, for example, accidents increase progressively as total sleep duration is decreased to 7, 5, and 3 hours per night over 1 week. In the same simulations, 3 hours total sleep duration was associated with loss of ability to simultaneously appreciate peripheral and centrally-presented visual stimuli. In tasks requiring judgment, increasingly risky behaviors emerge as the total sleep duration is limited to 5 hours per night. The high cost of an action seemingly is ignored as the sleep-deprived individual focuses on limited benefit. Glucose-PET studies show that

9

individuals deprived of sleep for 24 hours have a decrease in metabolism in the prefrontal and parietal associational areas. The areas most important for judgment, impulse control, attention, and visual association are disproportionately hypometabolic compared to the primary sensory and motor areas necessary for receiving and acting upon the environmental inputs. This indicates that the areas of the brain most responsible for higher-order cognition are to some degree less functional during sleep-deprived waking activity. Sleep deprivation is a relative concept. Small amounts of sleep loss (eg, 1 hour per night over many nights) have subtle cognitive costs, which appear to go unrecognized by the individual experiencing the sleep loss. More severe restriction of sleep for even a week leads to profound cognitive deficits similar to those seen in some stroke patients, which also appear to go unrecognized by the individual.

27.     On October 25, 2004 Defendants received a Freedom of Information Act request seeking the following information: With the shelters full, <u>where</u> in the City of San Diego tonight can a homeless person go and sleep without fear of receiving an illegal lodging ticket? The City has been unable to answer this question.

### FIRST CAUSE OF ACTION
*Cruel & Unusual Punishment*
*In Violation of the 8TH Amendment To*
<u>*The Constitution of the United States*</u>

28. Plaintiffs incorporate the allegations of ¶¶ 1 through 27.

29. Forces beyond the Plaintiffs' control, such as unemployment, poverty, and the wanton failure of the Defendant to provide alternatives, including but not limited to those which may be mandated by law, have compelled the Plaintiffs and others to live and sleep in public.

30. Sleeping is necessary to the maintenance of life. It constitutes an involuntary manifestation of the Plaintiffs' status as homeless.

10

31. The Defendants' pattern of citing, arresting, and fining or incarcerating (or both) involuntarily homeless individuals for sleeping in public, performed under color of state law by the Defendant, constitutes punishment of Plaintiffs based on their status as homeless persons, and as such, is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

## SECOND CAUSE OF ACTION
### *Declaratory Relief (CCP §1060)*

32. Plaintiffs incorporate the allegations of ¶¶1 through 31.

33.     An actual controversy exists between Plaintiffs and the class members on the one hand, and Defendants on the other, as to whether Defendants have violated 42 U.S.C. § 1983 by inflicting cruel and unusual punishment upon Plaintiffs by punishing status by issuing illegal lodging citations.

34.     Section 1060 of the Code of Civil Procedure provides that any person who desires a declaration of his rights or duties with respect to another may seek a declaration of those rights or duties.

35.     Plaintiff is and represents persons desiring a declaration of their rights and duties with respect to Defendants, within the meaning of Section 1060 of the Code of Civil Procedure because, among other reasons, Plaintiffs are, and represent the interests of, homeless residents and taxpayers in the defendant CITY OF SAN DIEGO directly affected by Defendants' actions and failures to act.

36.     Plaintiffs desire a judicial determination of the rights and duties of Defendants, and of their compliance or non-compliance with 42 U.S.C § 1983. Such declaration is necessary and appropriate at this time in order that Defendants can comply with their duties, and so that the rights, health and safety of Plaintiffs, class members and the public can be protected.

11

## THIRD CAUSE OF ACTION
### *Injunctive Relief (CCP §§526(a) & 527)*

37.     Plaintiffs incorporate the allegations of ¶¶1 through 36.

38.     As class members, injunctive relief is available to Plaintiffs pursuant to Code of Civil Procedure section 526(a), and 527 prior to class certification.

39.     Unless and until Defendants are enjoined by order of this Court from failing to comply with their obligations under the law, and enjoined from issuing citations pursuant to Penal Code §647(j) in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, and until Defendants are commanded to comply with their obligations to refrain from issuing such citations unless and until an alternative is available to Plaintiffs and class members as set forth above, Plaintiffs and class members are suffering and will suffer great and irreparable injury will Plaintiffs and the general public in that, among other things:

a.      Plaintiff and the class members will be deprived of rights under Federal law;

b.      Plaintiffs will suffer injury which cannot adequately be remedied by pecuniary compensation;

c.      Plaintiffs will suffer injuries which will be extremely difficult if not impossible to quantify; and,

d.      The important rights protected by the eighth amendment may be forever compromised and lost because continued actions as set forth herein will deprive Defendant of the ability to identify constitutionally prohibited punishment based on an individual's status.

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For a declaration that Defendants have violated Plaintiffs' rights and the rights of the class members by inflicting cruel and unusual punishment upon them by issuing illegal lodging citations under Penal Code §647(j) in violation of 42 U.S.C. § 1983;

12

Plaintiff's Complaint for Violation of 42 U.S.C. 1983

2. For a preliminary and permanent injunction enjoining Defendants and their agents, servants and employees and all other persons acting under and concert with or for them from issuing illegal lodging citations and thereby violating 42 U.S.C. §1983;

3. For Plaintiffs' attorneys fees and costs of suit incurred in this matter as provided by Government Code §800 and Code of Civil Procedure §1021.5 and as otherwise provided by law; and,

4. For such other relief as the Court deems just and proper.

Respectfully Submitted,

**SAN DIEGO VOLUNTEER LAWYER PROGRAM**

**COHELAN & KHOURY**
Timothy D. Cohelan

- and -

**DREHER LAW FIRM**
Robert Scott Dreher

Dated: November 18, 2004            By: _____

Attorneys for Plaintiffs

M:\JD\CASES\200\pleadings\complaint.doc

13

JS44
(Rev. 07/89)

**CIVIL COVER SHEET** 04 CV 2314 BEN (WMc)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Greg Spencer; Randall French; Margaret Armstrong; Jimmy Ward; Jeffrey Miles; et al. | The City of San Diego; City of San Diego Police Dept.; Chief of Police William Lansdowne  04 CV 2314 BEN (WMc) |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   San Diego | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   San Diego |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Robert Scott Dreher  DREHER LAW FIRM, 835 Fifth Ave., Ste. 202, San Diego, CA 92101  (619) 230-8828 | |

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- X 3 Federal Question (U.S. Government Not a Party)
- 2 U.S. Government Defendant
- 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

SEE ATTACHMENT    28:1331cv    GP

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 362 Personal Injury- Medical Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | | 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 365 Personal Injury - Product Liability | 630 Liquor Laws | 820 Copyrights | 450 Commerce/ICC Rates/etc. |
| 150 Recovery of Overpayment &Enforcement of Judgment | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 640 RR & Truck | 830 Patent | 460 Deportation |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 650 Airline Regs | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | 370 Other Fraud | 660 Occupational Safety/Health | **SOCIAL SECURITY** | 810 Selective Service |
| 153 Recovery of Overpayment of Veterans Benefits | 350 Motor Vehicle | 371 Truth in Lending | 690 Other | 861 HIA (1395ff) | 850 Securities/Commodities Exchange |
| 160 Stockholders Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | **LABOR** | 862 Black Lung (923) | 875 Customer Challenge 12 USC |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 864 SSID Title XVI | 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 730 Labor/Mgmt. Reporting & Disclosure Act | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence Habeas Corpus | 740 Railway Labor Act | **FEDERAL TAX SUITS** | 894 Energy Allocation Act |
| 220 Foreclosure | 442 Employment | 530 General | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/Accommodations | 535 Death Penalty | 791 Empl. Ret. Inc. Security Act | 871 IRS - Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Tort to Land | 444 Welfare | 540 Mandamus & Other | | | 950 Constitutionality of State |
| 245 Tort Product Liability | X 440 Other Civil Rights | 550 Civil Rights | | | 890 Other Statutory Actions |
| 290 All Other Real Property | | 555 Prisoner Conditions | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

- X 1 Original Proceeding
- 2 Removal from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from another district (specify)
- 6 Multidistrict Litigation
- 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | CHECK IF THIS IS A CLASS ACTION  X  UNDER f.r.c.p. 23 | DEMAND $ injunctive relief | Check YES only if demanded in complaint:  JURY DEMAND: X YES  NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE _____   Docket Number _____

| DATE   11/18/04 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

11/08/05   $150.00

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

Greg Spencer, et al. v. The City of San Diego, et al.
United States District Court, Southern District of California


## ATTACHMENT TO CIVIL COVER SHEET


The City of San Diego issues misdemeanor criminal citations for "sleeping in public" to hundreds of people who have nowhere else to sleep. These citations, issued pursuant to California Penal Code § 647(j), are a cruel violation of the Eighth Amendment to the United States Constitution, and present the homeless with a true Hobson's Choice: don't sleep in public, or don't sleep at all.