















CAG    2/9/06    11:38
3:04-CV-02314    SPENCER V. SAN DIEGO CITY OF
*22*
*AMDCMP.*

ORIGINAL

1 | **SAN DIEGO VOLUNTEER LAWYER PROGRAM**
2 | 625 Broadway, Ste. 925
San Diego, CA 92101
3 | 619-235-5656 / fax 619-235-5668

4 | **COHELAN & KHOURY**
Timothy D. Cohelan (CSB No. 60827)
5 | 605 C Street, Ste. 200
6 | San Diego, CA 92101
619-595-3001 / fax 619-595-3000
7 |
8 | **DREHER LAW FIRM**
Robert Scott Dreher (CSB No. 120527)
9 | Historic Louis Bank of Commerce Building
835 Fifth Avenue, Suite 202
10 | San Diego, CA 92101
11 | 619-230-8828 / fax 619-687-0136

12 | Attorneys for Plaintiffs

FILED

06 FEB -8 PM 12: 09

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

NUNC PRO TUNC

FEB - 3 2006

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

GREG SPENCER; RANDALL FRENCH; MARGARET ARMSTRONG; JIMMY WARD; JEFFREY MILES; SYLVIA LIEVANOS; JUAN ALEJO; STEVEN GREER; and ROBERT YBARRA, individually and on behalf of themselves and all others similarly situated,

        Plaintiffs,

        vs.

The CITY OF SAN DIEGO; CITY OF SAN DIEGO POLICE DEPARTMENT; and CHIEF OF POLICE WILLIAM LANSDOWNE, in his official capacity only,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No.: 04 CV-2314 BEN (WMC)

***SECOND AMENDED*** CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES, UNDER THE UNITED STATES CIVIL RIGHTS ACT (42 U.S.C. § 1983) and CALIFORNIA CODE OF CIVIL PROCEDURE § 1060.

*(Filed pursuant to Order Entered January 12, 2006)*

**Jury Trial Demanded**.

---

Plaintiffs' 2nd AMENDED Complaint for Declaratory Relief, Violation of 42 U.S.C. 1983, et al.

## INTRODUCTION

1.     The City of San Diego issues, prosecutes and punishes misdemeanor criminal citations for "sleeping in public" to hundreds of people who have nowhere else to sleep.   These citations, issued pursuant to Penal Code §647(j), have resulted and are resulting in severe punishments to these people, including fines they can't hope to pay, extended jail stays, compelled public work service, and probation situations in which another violation of law, however technical, results in additional monetary and freedom-depriving punishments, some for as long as 3 years.  They are a cruel violation of the U.S. and California Constitutions, and present the homeless with a true Hobson's Choice:  don't sleep in public, or don't sleep at all.   Sleep is a necessity, not a choice, and people are becoming "criminals" merely for sleeping.   Unless the City designates an alternative safe-zone where homeless people can sleep without fear of an "illegal lodging" citation, its police force should not be allowed to issue the citations that lead to prosecution, conviction, fines, and incarceration.

2.     "'*It was the best of times, it was the worst of times.*'   The contrasts of life as perceived by people in different stations of society are as vivid today as when Charles Dickens penned these words nearly one hundred fifty years ago.   Order, we believe, is better than chaos – predictability is more comfortable than the unknown.   In a society that prizes beauty, youth, vigor, and success that is measured by accumulation of precious things; the disheveled, the aged, the weary; those whose accumulated wealth is carried in a tattered blanket, present themselves in some quarters as a distraction to a desired representation of how the 'best of times' should appear.   They are extremely bright; they suffer from mental illnesses.   They are capable of causing serious physical injury or death;

1

their gentleness permits them to share their meager substance with birds that find a safe harbor at their feet. In making their claim to the American Dream, they participate in publicly-sponsored, government-supported celebrations from distant bridges rather than penthouses, knowing that their rights that Thomas Jefferson proclaimed inviolate, being life, liberty and the pursuit of happiness, are no less guaranteed to them than to those not so vulnerable because they carry evidence of their station in life in their wallets rather than in a bag or worn blanket. The homeless present many diverse faces. Gaining a better understanding of the daily life issues they face is necessary to judge whether relief is indicated in this case, considering at the same time the requirements law enforcement officials face in performing their lawful duties."[1]

3. This is an action for injunctive and declaratory relief under 42 U.S.C. § 1983 and CCP §§1060, 526(a) and 527, asking the Court to order the city of San Diego to stop issuing illegal-lodging citations under color of Penal Code §647(j) to homeless people who sleep in public, unless and until it designates an alternative sleep area.

## JURISDICTION

4. This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. Venue is proper in the Southern District of California because all Defendants reside in the District and all events giving rise to Plaintiffs' claims occurred in the District. The relief Plaintiffs seek is within this Court's power to grant.

## CLASS ACTION ALLEGATIONS

5. Plaintiffs bring this action against Defendants on their own behalf and on behalf of all other persons similarly situated. The class of people that Plaintiffs represent

---

[1] From *Opinion and Order*, <u>Johnson v. Board of Police Commissioners, et al.</u>, U.S. Dist. Court, Eastern Dist. of Missouri, Eastern Div., Case No. 4:04CV01266 ERW; Hon. E. Richard Webber, October 14, 2004.

2

Plaintiffs' 2nd AMENDED Complaint for Declaratory Relief, Violation of 42 U.S.C. 1983, et al.

consists of all those persons in the City of San Diego who are homeless and have no place to sleep other than in public, who face the prospect of receiving an illegal lodging ticket and subsequent conviction, fine and/or imprisonment, and those who are homeless and have no place to sleep who have already been issued one or more citations for illegal lodging and have received convictions and punishments including fines, probations, forced community service, and imprisonments, pursuant to PC § 647(j).

6.      The class is comprised of approximately 4,500 individuals who are homeless and living in the City of San Diego, who have nowhere to sleep other than in public and are thus committing a crime every time they fall asleep, and who therefore have received an illegal-lodging citation per PC §647(j), and who face the prospect of arrest, citation, trial, conviction, and punishment under PC §647(j).  Joining all these individuals in this lawsuit is impractical and unnecessary, but the disposition of their claims in a class action will benefit the parties, the Courts, Defendants and all the other citizens of San Diego.

7.      There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The class is united in its interests with respect to proof of Defendants' conduct, and the alleged effects caused by Defendants' actions.  The questions of law and fact common to the class predominate over questions which may affect individual class members, including but not limited to whether Defendants have violated 42 U.S.C. § 1983 by infringing upon Plaintiffs' constitutional freedom from cruel and unusual punishment by arresting them, issuing them citations, and/or punishing them for illegal lodging.

8.      Plaintiffs are asserting a claim that is typical of the claims of the entire class of affected persons described above.  Class treatment will permit the adjudication of claims by

3

many Class members who could not afford to individually litigate their claims or vindicate their rights against the government. There are no difficulties likely to be encountered in the management of this case which might preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this matter.

9.    Plaintiffs will fairly and adequately represent the interests of the class, and they have no interests antagonistic to those of the class. Indeed, Plaintiffs' interests are aligned with those of the class members. Plaintiffs have retained lawyers who are competent and experienced in class action litigation.

10.    The class of people whom Plaintiffs represent is in need of the relief sought herein, as its members have been, are being, and will be damaged and adversely affected by the issuance of illegal lodging citations by Defendants in light of Defendants' failure to provide or identify alternatives. In addition, Defendants' practice of issuing misdemeanor criminal citations, prosecuting, convicting and punishing plaintiffs for "sleeping in public," who have nowhere else to sleep, wastes valuable and precious tax dollars in enforcement and trial, diverts the Police's, the City's, and the Courts' attentions from other more serious issues, steals precious money from the homeless in the form of meaningless fines which they cannot afford, and by incarcerating them takes-up valuable jail space which could be used to house truly dangerous criminals. The problem also becomes compounded because the homeless, who often have no calendar system and whose belongings are often stolen, destroyed or lost, often inadvertently miss subsequent court hearings thus leading to additional criminal charges and punishments simply because they got a sleeping ticket.

/ / /

## IDENTIFICATION OF PARTIES

11.    Plaintiff GREG SPENCER is a resident of San Diego, California.  He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence.   On October 11, 2004 and November 9, 2004, the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1200 K Street, San Diego, and he has been convicted of the crime of "illegal lodging" pursuant to such citations and others.  On account of these citations and convictions Mr. Spencer has been sentenced and punished, which sentence and punishment included a $100 fine, 2 days incarceration in the County jail, and the threat of additional incarceration, suspended pending successful completion of 3 years' probation.   He was honorably discharged from the Navy in 1989.  On the dates he received these citations, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

12.    Plaintiff RANDALL FRENCH is a resident of San Diego, California.  He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence.  On November 28, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1400 Island Avenue, San Diego, and he has been convicted of the crime of "illegal lodging" pursuant to such citation. On account of this citation and conviction Mr. French has been sentenced and punished, which included fines in excess of $290 and the threat of incarceration, suspended pending successful completion of probation.   He was honorably discharged from the Marines in

5

1993. On the date he received this citation, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

13.    Plaintiff MARGARET ARMSTRONG is a resident of San Diego, California. She is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence. On August 24, 2004; October 17, 2004; October 20, 2004; October 27, 2004; and November 8, 2004 the Defendants cited her pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1800 Commercial Street, San Diego, and she has been convicted of the crime of "illegal lodging" pursuant to one or more of such citations.    On account of these citations and convictions Ms. Armstrong has been sentenced and punished, and those sentences and punishments included incarceration in the county jail for several days, hundreds of dollars in fines, multiple periods of forced community "volunteer service" and the threat of additional incarceration, suspended pending successful completion of 3 years' probation.    On the dates she received these citations, she had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

14.    Plaintiff JIMMY WARD is a resident of San Diego, California.  He was at all relevant times a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacked a fixed, regular and adequate nighttime residence.  In September, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 13TH and L Streets, San Diego.  On account of this citation Mr. Ward has been convicted, sentenced and punished, including fines, forced community "volunteer service" and the threat of

6

incarceration, suspended pending successful completion of probation. On the date he received this citation, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full" and he was on the waiting list at St. Vincent de Paul.

15. Plaintiff JEFFREY MILES is a resident of San Diego, California. He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence. On October 17, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of I-5 and 17th Street, San Diego. On account of this citation Mr. Miles has been convicted, sentenced and punished, which sentences and punishments included fines, periods of forced community "volunteer service" and the threat of incarceration, suspended pending successful completion of 3 years' probation. He was honorably discharged from the Navy in 1989. On the date he received this citation, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

16. Plaintiff SYLVIA LIEVANOS is a resident of San Diego, California. She is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence. On July 14, 2004, the Defendants cited her pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1500 Commercial Avenue, San Diego. On account of these citations Ms. Lievanos has been convicted, sentenced and punished, which included many days' incarceration in the county jail and monetary fines, and the threat of incarceration, suspended pending successful completion of a probationary

7

period.  On the date she received this citation, she had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

17.    Plaintiff JUAN ALEJO is a resident of San Diego, California.  He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence.  On October 27, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1800 Commercial Avenue, San Diego and he has been convicted of the crime of "illegal lodging" pursuant to such citation. On account of this citation and conviction Mr. Alejo has been sentenced and punished, which included 2 days incarceration, fines of $100, and the threat of additional incarceration, suspended pending successful completion of 3 years' probation.   On the date he received this citation, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

18.    Plaintiff STEVEN GREER is a resident of San Diego, California.  He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence.  On October 1, 2004 the Defendants cited him pursuant to Penal Code §647(j) for "illegal lodging" in the area of 2100 Morley Field, San Diego.  On account of this citation Mr. Greer was convicted, sentenced and punished, which included fines in excess of $200 and the threat of incarceration, suspended pending successful completion of 3 years' probation.  On the date he received this citation, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

19.     Plaintiff ROBERT YBARRA is a resident of San Diego, California.  He is a homeless individual as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. §11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence.  On September 28, 2004; October 20, 2004; and October 27, 2004 the Defendants cited him pursuant to Penal Code Section 647(j) for "illegal lodging" in the area of 1800 Imperial Avenue, San Diego and he has been convicted of the crime of "illegal lodging" pursuant to one or more such citations.  On account of these citations, Mr. Ybarra has been sentenced and punished, which included several days of incarceration, multiple fines of $200, and the threat of additional incarceration, suspended pending successful completion of 3 years' probation.  In addition his constitutional right to freedom of movement has been impinged because he has been ordered not to go near certain areas where he has received such citations.  On the date he received these citations, he had nowhere to sleep but in a public place, inasmuch as local homeless shelters were reported "full."

20.     Plaintiffs and other members of the class have received and are receiving other illegal lodging citations pursuant to PC §647(j), and each of these citations has led to conviction and punishment, including steep monetary fines (whose 'steepness' is exponentially compounded by the fact that Plaintiffs lack the assets, means or wherewithal to pay); incarceration in the County jail, sometimes for weeks or longer; compelled public work service; and oppressive probation situations which, by design, will likely be violated.

21.     Defendant CITY OF SAN DIEGO is now, and at all times mentioned in this complaint was, a local governmental agency and subdivision of the State of California.  Defendant CITY OF SAN DIEGO, through its agents the City Council, City Attorney, City

9

Manager, Police Department, and Police Chief, undertakes to arrest and cite people pursuant to Section 647(j) of the California Penal Code within its territorial boundaries.

22. Defendant CITY OF SAN DIEGO POLICE DEPARTMENT is the city's law-enforcement department, and WILLIAM LANSDOWNE is the CITY's Chief of Police. Article V, Section 57 of the City Charter of the CITY OF SAN DIEGO provides for the establishment of the CITY's Police Department, led by a Chief of Police appointed by the City Manager and confirmed by a majority of the City Council. The City Charter mandates that the CHIEF OF POLICE shall appoint, direct and supervise the personnel of the department and exercise all powers and duties provide by general laws or by ordinance of the City Council. These laws include, but are not limited to, Penal Code §647(j). The DEPARTMENT's Mission Statement is "maintain peace and order by providing the highest quality police services in response to community needs by Apprehending Criminals, Developing Partnerships, and Respecting Individuals." Mr. LANSDOWNE is sued only in his official capacity.

## FACTUAL ALLEGATIONS

23. According to the July 2004 RTFH Regional Homeless Profile, the City of San Diego has only about 2,019 year-round homeless beds, while the number of "homeless people" in the City of San Diego is about 4,458. With the construction of the new Baseball park and the attendant designation of its immediate and neighboring area (commonly known as "East Village") as "redevelopment zones," the Defendants have adopted a custom, practice and policy of citing, arresting, and otherwise interfering with homeless people for sitting or sleeping, two essential daily activities of life, in public within the City, where these individuals are forced to live. Beginning in 2001, Defendants' "illegal lodging"

citations doubled in number over the prior year. From May, 2002 to April 2003 alone Defendants issued 773 illegal-lodging tickets pursuant to Penal Code §647(j). Plaintiff and the class have been, and continue to be, cited, arrested, and charged with illegal lodging pursuant to California Penal Code § 647(j). At the same time, the local homeless shelters (i.e., St. Vincent De Paul, Rachel's Women's Center, VOA, Rescue Mission) have been filled to the brim, turning away Plaintiffs and the class members. Plaintiffs and the class have been and will be arrested and cited by the Defendants solely because they sit or sleep in public places.

24.    From June 2001 – July 2002, nearly 4200 people contacted the Info Line of San Diego County seeking nighttime shelter. Of those, 3,798 were turned away because the shelters were full. The following year, 3,884 were turned away, while 3,758 were referred to shelters.

25.    In the same year, 2,641 individuals were arrested and/or cited pursuant to Penal Code §647(j) in the City's Downtown Central Division <u>alone</u>. Thus, almost half of the people turned-away from the shelters were arrested and/or cited for illegal lodging (the arrest figures, however, do not include any area other than the Central Division). For the last nine months of 2003, the city made 374 arrests and issued 1775 citations (total 2149) pursuant to PC §647(j); in 2004 the numbers of PC §647(j) contacts nearly doubled: 1038 arrests and 3031 citations (total 4069), as the Defendants increased their efforts to "clean out" the homeless from Downtown for the opening of, and first season at, Petco Park. In 2005 the total PC §647(j) arrests and citations was 2778.

26.    At the time of their arrests for "illegal lodging," Plaintiffs and the class members were not posing a safety hazard to themselves or others. Plaintiffs were and are

11

involuntarily homeless, with no available shelter or lodging accommodations, and intend to and must sleep or lodge outside, in public, unsheltered, and have been and/or will be in the future arrested and cited therefor. The statute and its enforcement by Defendants as set forth herein is an attempt by Defendant to deter Plaintiffs and the class from performing the necessary life function of sleeping, which deterrence is impossible. Plaintiffs and the class members have been prosecuted and will continue to be prosecuted for engaging in, or attempting to engage in, such activity. Defendants' actions are likely to threaten the already precarious existence of Plaintiffs and the class, by imposing or forcing upon them health and safety hazards as well as economic and social hardship.

27. The above-mentioned actions by Defendants have caused and will continue to cause great humiliation, psychological, physical and emotional suffering, degradation, pain and injury, financial loss, and loss of liberty and freedom to Plaintiffs and the class they represent. Defendants' actions pose a dangerous health risk to Plaintiffs and the class, and, as a result, to the general public. Sleep is a medical and physical necessity. Studies in individuals deprived of sleep have shown that after just 24 hours of sustained wakefulness, the metabolic activity of the brain decreases significantly (up to 6% for the whole brain and up to 11% for specific cortical and basal ganglionic areas). In humans, sleep deprivation also results in a decrease in core body temperature, a decrease in immune system function (as measured by white cell count and activity), and a decrease in the release of growth hormone. Sleep deprivation also has been implicated as a cause of increased heart-rate variability. With decreased sleep, higher-order cognitive tasks are affected early and disproportionately. Tests requiring both speed and accuracy demonstrate considerably-slowed speed before accuracy begins to fail. Total sleep

Plaintiffs' 2nd AMENDED Complaint for Declaratory Relief, Violation of 42 U.S.C. 1983. et al.

duration of 7 hours per night over 1 week has resulted in decreased speed in tasks of both simple reaction time and more demanding computer-generated mathematical problem solving. Total sleep duration of 5 hours per night over 1 week shows both decrease in speed and the beginning of accuracy failure. Total sleep duration of 7 hours per night over 1 week leads to impairment of cognitive work requiring simultaneous focus on several tasks. In driving simulations, for example, accidents increase progressively as total sleep duration is decreased to 7, 5, and 3 hours per night over 1 week. In the same simulations, 3 hours total sleep duration was associated with loss of ability to simultaneously appreciate peripheral and centrally-presented visual stimuli. In tasks requiring judgment, increasingly risky behaviors emerge as the total sleep duration is limited to 5 hours per night. The high cost of an action seemingly is ignored as the sleep-deprived individual focuses on limited benefit. Glucose-PET studies show that individuals deprived of sleep for 24 hours have a decrease in metabolism in the prefrontal and parietal associational areas. The areas most important for judgment, impulse control, attention, and visual association are disproportionately hypometabolic compared to the primary sensory and motor areas necessary for receiving and acting upon the environmental inputs. This indicates that the areas of the brain most responsible for higher-order cognition are to some degree less functional during sleep-deprived waking activity. Sleep deprivation is a relative concept. Small amounts of sleep loss (*e.g.*, 1 hour per night over many nights) have subtle cognitive costs, which appear to go unrecognized by the individual experiencing the sleep loss. More severe restriction of sleep for even a week leads to profound cognitive deficits similar to those seen in some stroke patients, which also appear to go unrecognized by the individual.

13

28.     On October 25, 2004 Defendants received a Freedom of Information Act request seeking the following information: "With the shelters full, <u>where</u> in the City of San Diego tonight can a homeless person go and sleep without fear of receiving an illegal lodging ticket?" The City has been unable or unwilling to answer this question.

29.     On at least one instance since the filing of this action, a potential class member has been acquitted by the jury after trial of the charged crime of illegal lodging pursuant to Penal Code §647(j), based on the defense of "necessity."

**FIRST CAUSE OF ACTION**
*Cruel & Unusual Punishment*
*In Violation of the Eighth Amendment To*
*The Constitution of the United States*

30.     Plaintiffs incorporate the allegations of ¶¶ 1 through 29.

31.     Forces beyond Plaintiffs' control, such as unemployment, poverty, and the failure of the Defendant to provide alternatives, including but not limited to those which may be mandated by law, have compelled Plaintiffs and others to live and sleep in public.

32.     Sleeping is necessary to the maintenance of life. It constitutes an involuntary manifestation of the Plaintiffs' status as homeless. Plaintiffs and the members of the class may not avoid or do without sleep.

33.     Plaintiffs have standing to bring this suit under the Eighth Amendment for the following reasons: (1) the punishments that have been imposed upon the Plaintiffs and class members as set forth above are of the type which should be and are limited and prohibited by the Eighth Amendment; (2) the punishments that have been imposed upon the Plaintiffs and class members as set forth above are grossly disproportionate to the severity of the "crime" of sleeping; and (3) the acts and conduct which have been made criminal and for which Plaintiffs and the Class Members have been arrested, convicted and

14

punished are acts and conduct of which the Eighth Amendment prohibits criminalization, conviction and punishment.

34.     The Defendants' pattern of citing, arresting, prosecuting, trying, convicting, and fining or incarcerating (or both) involuntarily homeless individuals for sleeping in public, performed under color of state law by the Defendant, constitutes punishment of Plaintiffs based on their status as homeless persons, and as such, is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

## SECOND CAUSE OF ACTION
### *Declaratory Relief (CCP §1060)*

35.     Plaintiffs incorporate the allegations of ¶¶1 through 34.

36.     An actual controversy exists between Plaintiffs and the class members on the one hand, and Defendants on the other, as to whether Defendants have violated 42 U.S.C. §1983 by inflicting cruel and unusual punishment upon Plaintiffs by punishing status by issuing illegal lodging citations and/or trying and convicting and punishing them following those citations.  In addition, an actual controversy exists between Plaintiffs and the class members on the one hand, and Defendants on the other, as to whether Defendants, in doing the acts alleged herein, have violated Plaintiffs' and the class members' United States Constitutional privileges and immunities and rights of equal protection and due process.   In addition, an actual controversy exists between Plaintiffs and the class members on the one hand, and Defendants on the other, as to whether Defendants, in doing the acts alleged herein, have violated Plaintiffs' and the class members' California Constitutional privileges and immunities and rights of equal protection and due process, including but not limited to Article I, §17 and Article I, §24.

15

37. Code of Civil Procedure §1060 provides that any person who desires a declaration of his rights or duties with respect to another may seek a declaration of those rights or duties.

38. Plaintiffs are and represent persons desiring a declaration of their rights and duties with respect to Defendants, within the meaning of Code of Civil Procedure §1060 because, among other reasons, Plaintiffs are, and represent the interests of, homeless residents and taxpayers in the defendant CITY OF SAN DIEGO directly affected by Defendants' actions and failures to act.

39. Plaintiffs desire a judicial determination of the rights and duties of Defendants, and of their compliance or non-compliance with 42 U.S.C § 1983, and whether Defendants have abridged or violated Plaintiffs' United States and California Constitutional privileges and immunities and rights of equal protection and due process. Such declaration is necessary and appropriate at this time in order that Defendants can comply with their duties, and so that the rights, health and safety of Plaintiffs, class members and the public can be protected.

## THIRD CAUSE OF ACTION
### *Injunctive Relief (CCP §§526(a) & 527)*

40. Plaintiffs incorporate the allegations of ¶¶1 through 39.

41. As class members, injunctive relief is available to Plaintiffs pursuant to Code of Civil Procedure section 526(a), and 527 prior to class certification.

42. Unless and until Defendants are enjoined by order of this Court from failing to comply with their obligations under the law, and enjoined from issuing citations pursuant to Penal Code §647(j) in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, and the Plaintiffs' California and United States Constitutional

16

privileges and immunities and rights of due process and equal protection, and until Defendants are commanded to comply with their obligations to refrain from issuing such citations unless and until an alternative is available to Plaintiffs and class members as set forth above, Plaintiffs and class members are suffering and will suffer great and irreparable injury in that, among other things:

a.  They will be deprived of rights under Federal and State law;

b.  They will suffer injury which cannot adequately be remedied by money;

c.  They will suffer injuries which will be extremely difficult if not impossible to quantify; and

d.  The important rights protected by the California and United States Constitutions may be forever compromised and lost because continued actions as set forth herein will deprive Defendant of the ability to identify constitutionally-prohibited action based on an individual's status.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1.  For a declaration that Defendants have violated Plaintiffs' rights and the rights of the class members by inflicting cruel and unusual punishment upon them by issuing illegal lodging citations under Penal Code §647(j) in violation of 42 U.S.C. § 1983;

2.  For a declaration that Defendants have violated and continue to violate Plaintiffs' and the class members' State and Federal Constitutional Privileges and Immunities and rights of Due Process and Equal Protection of the laws;

3.     For a preliminary and permanent injunction enjoining Defendants and their agents, servants and employees and all other persons acting under and concert with or for them from issuing illegal lodging citations and thereby violating 42 U.S.C. §1983 and the State and Federal Constitutional Privileges and Immunities and rights of Due Process and Equal Protection of the laws until such time as there is provided or designated an area where Plaintiffs may sleep without fear of such citation;

4.     For Plaintiffs' attorneys fees and costs of suit incurred as provided by Government Code §800 and Code of Civil Procedure §1021.5 and as otherwise provided by law; and

5.     For such other relief as the Court deems just and proper.

Respectfully Submitted,

> **SAN DIEGO VOLUNTEER LAWYER PROGRAM**
>
> **COHELAN & KHOURY**
> Timothy D. Cohelan
>
> - and -
>
> **DREHER LAW FIRM**
> Robert Scott Dreher

Dated: February 1, 2006          By:     _____
                                          Attorneys for Plaintiffs

N:\JD\CASES\200\pleadings\amcomp2.doc



# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

## GREG SPENCER, et al, v. CITY OF SAN DIEGO, et al
### Case No. 04 CV-2314 BEN (WMC)

## PROOF OF SERVICE

I, the undersigned, declare:

I am over the age of eighteen years and not a party to the case. I am employed in the County of San Diego, California, where the service occurs; and my business address is 835 Fifth Ave, Suite 202, San Diego, CA 92101.

On **February 2, 2006**, I caused to be served copies of the documents described as:

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES, UNDER THE UNITED STATES CIVIL RIGHTS ACT (42 U.S.C. § 1983) and CALIFORNIA CODE OF CIVIL PROCEDURE § 1060**

on the following party in this action:

Michael J. Aguirre, Esq.
Mark Stiffler, Esq.
OFFICE OF THE CITY ATTORNEY
OF THE CITY OF SAN DIEGO
1200 Third Avenue, Suite 1100
San Diego, CA 92101
*Attorneys for Defendants City of San Diego, San Diego Police Department and William Lansdowne*

[X]     BY MAIL. I am readily familiar with Dreher Law Firm's practice of collection and processing of correspondence for mailing with the United States Postal Service, and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business pursuant to Code of Civil Procedure 1013a.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and was executed **February 2, 2006**, at San Diego, California.

_____
Robert Scott Dreher